## Karp Bros., Inc. v. West Ward Savings & Loan Association

*Litke, Gettig, Flood & Geiser*, for plaintiff.
*Andrew M. Pipa, Jr.*, for defendant.

CAMPBELL, P. J., May 15, 1969.—J. N. McCown and his wife mortgaged their "Ranch Court Motel" in State College to the defendant on April 29, 1964. Desirous of operating a "Dutch Pantry Restaurant" unit, McCowns negotiated for the delivery of the necessary equipment from plaintiff's predecessor, Joseph S. Karp and Bros. To protect their interest in the equipment, a financing statement was filed in the Prothonotary's Office of Centre County on February 10, 1965, and the McCowns executed a bailment lease dated March 8, 1965. To secure the necessary financing, the lessor assigned the lease to the Hollidaysburg Trust Company of Hollidaysburg, Pennsylvania. When default occurred on defendant's mortgage, it issued execution and became the purchaser of the property at sheriff's sale. Notice of plaintiff's claim was given to the sheriff. When defendant refused plaintiff

the right to remove the restaurant equipment, this replevin action was instituted. Defendant filed a counterbond. The parties agreed for the court to hear the matter without a jury. From a partial stipulation of facts and from testimony taken by the court, findings of fact and conclusions of law were filed in accordance with the Act of April 22, 1874, P. L. 109, sec. 2, as amended, 12 PS §689. The court found a verdict in favor of plaintiff in the amount of $11,-279.82. Defendant has filed exceptions to all of the court's findings of fact and conclusions of law and of course the verdict for plaintiff.

Throughout this proceeding, defendant has raised a multitude of objections. We believe it fair to state that the basic facts are not in dispute. Defendant does, however, take issue with the court's interpretation and the findings and conclusions deduced from the evidence. We will discuss them under the following headings.

### I. Title and Right of Immediate Possession

Title and right of immediate possession is a prerequisite to plaintiff's recovery in a replevin action: International Electronics Company v. N.S.T. Metal Products Company, Inc., 370 Pa. 213 (1952).

Defendant contends that plaintiff sold to McCown the restaurant equipment and therefore conveyed title. We interpret the transactions otherwise and hold that plaintiff retained title as security as evidenced both by the financing statement and the bailment lease. Defendant contends in the alternative that, when plaintiff assigned the bailment lease to the Hollidaysburg Trust Company to finance the transaction, they gave up their right of possession. Again we would hold otherwise as the assignment was collateral for the loan, was with recourse, and the testimony is clear that plaintiff herein had the duty and re-

sponsibility of repossession in the event of default. In an effort to defeat plaintiff's claim, defendant contends that if anyone has the right to recover, it is the Hollidaysburg Trust Company. During the course of this trial a petition to intervene as a party plaintiff was filed by the Hollidaysburg Trust Company, intervention was allowed by the court, and in the testimony the Hollidaysburg Trust Company indicated, without reservation, that plaintiff herein had the right and the duty of repossession.

## II. Financing Statement

The financing statement was filed pursuant to the Uniform Commercial Code. Defendant contends that the financing statement is improper in that it did not describe the real estate, averring that certain of the collateral was affixed thereto. Nowhere in the testimony is there any evidence that any of the chattels were affixed to the real estate in the true legal sense of being permanently attached thereto. A reading of the individual items would likewise indicate that they were not affixed to the real estate and hence plaintiff was not required to furnish a description of the real estate. It was also suggested that the transaction represented a sale and that plaintiff cannot have title to and a lien on the same property. While this may be a correct general statement, the Uniform Commercial Code contemplates a title retention instrument and the filing of a financing statement as further protection to the party who furnishes the chattels. The financing statement is notice to the world of the interest of the secured party and title retention by the secured party is not inconsistent therewith.

## III. Bailment Lease

Defendant contends that since section 9-102 of the Uniform Commercial Code of April 6, 1953, P. L. 3,

was amended on October 2, 1959, P. L. 1023, sec. 9, the words "bailment lease" were excluded and that, therefore, the provisions of the Uniform Commercial Code do not apply. With this we cannot agree. We have examined the 1956 recommendations of the editorial board for the Uniform Commercial Code. Their recommendation was "to delete the words 'bailment lease' since true leases are frequently referred to as such and this phrase is unnecessary since included in the concept of a lease intended as security."

Under section 9-102, the provisions of the Uniform Commercial Code relating to secured transactions apply to any transaction (regardless of its form) which is intended to create a security interest and particularly to chattel mortgages, conditional sales, or other lien or title retention contracts: Bloom v. Hilty, 210 Pa. Sup. Ct. 255 (1967).

## IV. Novation

McCown became financially embarrassed and was unable to make the bailment lease payments. The Hollidaysburg Trust Company, with the knowledge and consent of plaintiff, refinanced, extended the term of and lowered the monthly payments of their contract. Defendant contends that this was a novation which defeats the replevin action. We believe this contention to be without merit. We believe the law quite clear that, unless the parties specifically intend otherwise, a modification of a financial commitment does not indicate payment and the substitution of an entirely new obligation. Nothing in the record so indicates. The refinancing was not a payment but was a continuation of the original claim under modified terms.

And now, to wit, May 15, 1969, we therefore dismiss defendant's exceptions to the court's findings of

fact, conclusions of law and verdict and affirm the court's verdict.