### In re SPECIALTY TAPE CORPORATION, Debtor.

**James P. BURNHAM, Ronald J. Faber, Dennis K. Jackson, Arthur T. Leach, Lori, Inc., and Specialty Tape Corporation, Plaintiffs,**

**v.**

**William C. BARTLEY, Dan Burgy, Tamworth Management, Inc., and Steel City Tape Corporation, Defendants.**

Bankruptcy No. 90–3525–BM.
Adv. No. 90–0576–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 10, 1991.

Ralph A. Finizio, Houston Harbaugh, P.C., Pittsburgh, Pa., for plaintiffs.

William C. Bartley, Dan Burgy, Tamworth Management, Inc., Steel City Tape Corp., Pittsburgh, Pa., pro se defendants.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiffs allege that defendants Bartley and Burgy, both of whom had been officers and directors of Specialty Tape Corporation (hereinafter "debtor"), surreptitiously and unlawfully transferred debtor's assets to Steel City Tape Corporation (hereinafter "Steel City"), of which they also were officers and directors. Plaintiffs seek monetary damages and replevin of a tape slitter.

Defendants deny that their actions were unlawful and argue that neither monetary damages nor replevin of the tape slitter is appropriate.

As it is clear to the court that defendants have breached the duties owed to plaintiff, and as it is equally clear that defendants counterclaim is without merit, judgement will be entered in favor of debtor and against defendants Bartley and Burgy in the amount of $9,979.84, and possession of the tape slitter will be awarded to debtor.

–I–

### STATEMENT OF JURISDICTION

The parties stipulate that this is a replevin action originally filed in the Court of Common Pleas of Allegheny County, Pennsylvania involving an asset of debtor, and that this court has jurisdiction as a core proceeding pursuant to 28 U.S.C. § 1334 and § 157. This action was properly and timely removed to this court pursuant to 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027.

–II–

### FACTS

Lori, Inc. is the parent corporation of debtor. All the outstanding shares in Lori, Inc. are owned by plaintiffs Burnham (20%), Faber (20%), Jackson (20%), Leach

(20%), and defendant Tamworth Management, Inc. (20%).

Debtor, a wholly-owned subsidiary of Lori, Inc., was in the business of custom-cutting tape for commercial uses. The assets used in debtor's business were purchased in March of 1988 from another entity known as Specialty Tape Corporation. The major asset purchased was a tape slitter which was used to cut tape into various widths suitable for commercial use.

Defendant Bartley was President and a director of Lori, Inc. and of debtor until December 20, 1989. He was also the sole proprietor of Tamworth Management, Inc., debtor's manager, and was the sole proprietor and a director of Steel City Corporation.

Defendant Burgy was an officer and a director of Lori, Inc. and of debtor until December 20, 1989. He also was an employee of Tamworth Management, Inc. and was an officer and a director of Steel City.

Defendant Tamworth Management, Inc. managed the daily operations of debtor until December 20, 1989.

Defendant Steel City is owned by defendant Bartley and is in the same business as and in direct competition with debtor.

Disagreements concerning the operations of debtor eventually arose between plaintiffs Burnham and Faber and defendant Bartley. Burnham and Faber made several attempts in September and October of 1989 to remove Bartley and Burgy as officers and directors of debtor. Bartley and Burgy subsequently resigned as officers and directors of debtor on December 20, 1989 and were replaced by Burnham and Faber. Tamworth Management was also removed at that time as manager of debtor.

On October 13, 1989, without the knowledge or consent of any other shareholder of Lori, virtually all of debtor's assets were transferred to Steel City. An Agreement of Sale was executed on behalf of debtor by defendant Bartley and on behalf of Steel City by defendant Burgy. Specialty agreed to sell its inventory, shelving, goodwill, certain accounts receivable, and the tape slitter for $30,362.66. Steel City agreed to pay the purchase price by assuming the outstanding debt owed by debtor on the tape slitter. In addition, certain accounts receivable, a worker's compensation claim, and past-due Pennsylvania sales tax were assumed by defendants.

A Bill of Sale also was executed at that time—i.e., on October 13, 1989—by defendants Bartley and Burgy. It recited that debtor had transferred to Steel City: all specified inventory; customer lists and files; all equipment originally obtained on March 4, 1988, as well as equipment subsequently obtained; the tape slitter; corporate goodwill; and specified accounts receivable.

Concurrently, Bartley and Burgy executed a resolution as directors of debtor which authorized the sale of debtor's assets to Steel City. The resolution also authorized debtor's officers—i.e., themselves—to execute the required documents and to take any action necessary to implement the sale.

Approximately one week later, on October 18, 1989, Burgy sent a letter as President of Steel City to all of debtor's customers informing them that their accounts would be serviced in the future by Steel City. The other shareholders of Lori, Inc. did not discover the sale until after Bartley and Burgy had resigned as directors of debtor on December 20, 1989.

On April 15, 1990, plaintiffs commenced the present action in the Court of Common Pleas of Allegheny County, Pennsylvania, at GD No. 90-6184. An Order of Court was executed therein directing that a Writ of Seizure for the tape slitter be issued upon plaintiffs' posting of a bond in the amount of $30,000.00. Plaintiffs posted the required bond on May 16, 1990, whereupon a Writ of Seizure was issued directing the sheriff to take possession of the tape slitter. The tape slitter subsequently was returned to plaintiffs by the sheriff.

On November 9, 1990, debtor filed a voluntary Chapter 11 petition in this court. The above-captioned case was removed from the state court to this court on December 21, 1990, pursuant to Bankruptcy Rule 9027.

## –III–

### ANALYSIS

#### A. *Breach of Fiduciary Duty*

Plaintiffs allege that defendants Bartley and Burgy breached a fiduciary duty they owed as officers and directors to debtor and its sole shareholder, Lori, Inc., in transferring virtually all of debtor's assets to Steel City.

 Bartley and Burgy, as directors of debtor, stood in a fiduciary relation to debtor. As such, they were required to discharge their duties in good faith. *See* 15 Pa.C.S.A. § 512(a) (Purdon's 1991 Pamphlet). They owed a duty of loyalty to debtor. *See CST, Inc. v. Mark*, 360 Pa.Super. 303, 309, 520 A.2d 469, 471 (1987); *see also Hill v. Hill*, 279 Pa.Super. 154, 159, 420 A.2d 1078, 1081 (1980). A director may not act contrary to or compete with the interests of the corporation. *See Vulcanized Rubber & Plastics Co. v. Scheckter*, 400 Pa. 405, 412, 162 A.2d 400, 405 (1960).

 Their obligation as directors also extended to the shareholders. While it is not altogether accurate to say that a director is a trustee for the shareholders, a director is required to manage the affairs of the corporation so as to promote the common interest of the shareholders, as opposed to his own private interest. *See Fitzpatrick v. Shay*, 314 Pa.Super. 450, 455–56, 461 A.2d 243, 246 (1983) (citation omitted).

 The evidence presented at trial overwhelmingly establishes that Bartley and Burgy breached their duty as fiduciaries in approving a resolution as directors of debtor authorizing the sale of its assets to Steel City and empowering themselves as officers of debtor to execute all necessary documents.

The resolution and resultant sale were not in good faith. Bartley, who had invested his own funds and time in debtor, became embroiled in a battle for control of debtor with Burnham and Faber. Apparently he became convinced that Burnham and Faber would eventually wrest control of debtor from him. Rather than allow that to happen, Bartley and Burgy resolved to transfer debtor's assets to Steel City. Their actions were preemptive and were without notice to any party in interest, including the other shareholders of Lori. It was only after Bartley and Burgy had resigned as directors of debtor, some nine (9) weeks later, that other shareholders learned of the clandestine sale.

Also, as has been noted, Steel City was in the same type of business as debtor and was owned by Bartley. Shortly after the sale had taken place, Burgy sent a letter as President of Steel City to debtor's customers which advised them that Steel City henceforth would service their accounts. This action was designed to promote the interests of a competitor of debtor in which they were also officers and directors and were taken at the expense of debtor's interests, which they were obligated to protect and promote.

Moreover, the clandestine sale of debtor's assets and the loss of its customers effectively put debtor out of business and was accomplished at the expense of other shareholders. The tape slitter was crucial to debtor's business in that it enabled debtor to service its customers expeditiously and in a way that promoted goodwill. The loss of its customers to Steel City deprived debtor of the opportunity to generate accounts receivable and the cash flow needed to pay its creditors.

 The test of liability for breach of fiduciary duty is whether the director or officer was unjustly enriched. *See Bailey v. Jacobs*, 325 Pa. 187, 194, 189 A. 320, 324 (1937). Defendants Bartley and Burgy clearly were unjustly enriched by the transfer of debtor's assets to Steel City.

 The measure of damages for breach of fiduciary duty is the profits lost as a consequence of the breach. *See CST, Inc. v. Mark*, 360 Pa.Super. at 319, 520 A.2d at 472. It was stipulated at trial that gross sales by Steel City to debtor's former customers amounted to $10,860.21 and that the profit realized on those sales was $1,954.84.

Defendants, in an unprecedented display of "chutzpa" aver by way of counterclaim that had plaintiff not taken legal action to repossess their property, they would have utilized same and earned $8,025.00. Assuming defendants' numbers, as set forth in their Pre–Trial Statement, are accurate, it appears likely that had defendants remained faithful to their fiduciary duties, then debtor would have remained in business and would have earned said sum.

Judgment will be entered in favor of debtor and against defendants Bartley and Burgy in the amount of $1,954.84, plus $8,025.00, for a total of $9,979.84.

## B. *Replevin*

Count VI of the Complaint is an action in replevin. Debtor seeks an order granting it possession of the tape slitter.

Replevin is an action undertaken to regain possession of goods and chattels and to recover damages for their capture and detention, by the illegal act of the defendant. *See International Electronics Co. v. N.S.T. Metal Products Co.*, 370 Pa. 213, 217, 88 A.2d 40, 42 (1952). Plaintiff in a replevin action must demonstrate a right to possession and a general or special right in the property. *Id.*

The sole issue in a replevin action is title and the right to possession. All matters foreign thereto must be excluded from consideration and are not available as defenses. *See Equico Lessors, Inc. v. Ewing*, 281 Pa.Super. 147, 153, 421 A.2d 1190, 1193 (1980).

Steel City denies that debtor has title to and a right to possession of the tape slitter.

Debtor had title to and a possessory right in the tape slitter prior to October 13, 1989, when debtor's "right, title and interest" in the tape slitter purportedly was transferred to Steel City. It remains to be determined whether said transfer was valid and enforceable under the facts of this case.

The fiduciary duty which a director owes to a corporation does not absolutely preclude that director from dealing with the corporation. *See In re Lerch's Estate*, 399 Pa. 59, 71–72, 159 A.2d 506, 513 (1960). The fact that a director has a personal interest in a contract does not render the contract *ipso facto* void. *See Salem Iron Co. v. Lake Superior Consolidated Iron Mines*, 112 F. 239, 242–43 (3rd Cir. 1901).

The above principle is now codified at 15 Pa.S.C.A. § 1728(a), which provides in pertinent part as follows:

(a) **General rule.**—A contract or transaction ... between a business corporation and another domestic or foreign corporation for profit ... in which one or more of its directors or officers are directors or officers or have a financial or other interest, shall not be void or voidable solely for that reason, or solely because the director or officer is present at or participates in the meeting of the board of directors that authorized the contract or transaction, or solely because his or their votes are counted for that purpose, if:

(1) the material facts as to the relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors and the board authorized the contract or transaction by the affirmative votes of a majority of the disinterested directors even though the disinterested directors are less than a quorum;

(2) the material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon and the contract or transaction is specifically approved in good faith by vote of those shareholders; or

(3) the contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified by the board of directors or the shareholders.

None of the preconditions set forth in (a)(1), (2), or (3) has been met in this case. The sale of debtor's assets to Steel City was not presented to and authorized by the affirmative vote of a majority of disinter-

ested directors. There were no disinterested directors in this instance. All directors involved—i.e., Bartley and Burgy—were interested. In addition, the material facts concerning the proposed sale and Bartley's and Burgy's interest in Steel City were not disclosed to the other shareholders of Lori, Inc. prior to the sale. As a result, said sale was not ratified by them. Finally, the transaction was not fair to debtor. The sale was clandestine and was to a competitor of debtor. The net effect of the transaction was to put debtor out of business by depriving it of its most important asset and of its customers, many of whom unwittingly did business with that competitor.

It follows from the foregoing that the transaction of October 13, 1989 by which debtor purportedly transferred its interest in the tape slitter to Steel City is voidable. Debtor retained its property interest in the tape slitter and is entitled to regain possession thereof.

C. *Counterclaims*

Two counterclaims have been brought by the defendants. Steel City alleges in the first counterclaim that debtor and Lori, Inc., acting through their officers and directors after December 20, 1989, breached the contract of October 13, 1989. The second counterclaim is by all defendants and is against plaintiffs Burnham, Faber, Jackson, and Leach. Defendants allege that said plaintiffs deprived defendants of the economic benefit of the contract of October 13, 1989.

Both counterclaims will be denied because each is predicated upon the assumption that the agreement of October 13, 1989 between debtor and Steel City is valid and enforceable. The determination was made previously that said agreement is voidable.

An appropriate Order will be issued.

ORDER OF COURT

AND NOW at Pittsburgh this 10th day of October, 1991, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that judgment is entered in favor of debtor Specialty Tape Corporation and against defendants William C. Bartley and Dan Burgy in the amount of $9,979.84.

IT IS FURTHER ORDERED that debtor Specialty Tape Corporation is entitled to possession of the tape slitter.