**FIDELITY FEDERAL SAVINGS AND LOAN ASSOCIATION; Wilmington Savings Fund Society, FSB; and Star States Pennsylvania Corporation, Plaintiffs,**

v.

**Armondo FELICETTI; Louis Scarcia; Louis A. Iatarola, individually; Louis A. Iatarola, Realty Appraisal Group, Ltd.; and Fidelity and Deposit Company of Maryland, Defendants.**

Civ. A. No. 92–0643.

United States District Court,
E.D. Pennsylvania.

Aug. 4, 1993.

See also 148 F.R.D. 532, 813 F.Supp. 332, —— F.Supp. ——.

Raymond McGarry, Antoinette R. Stone, Thomas L. Van Kirk, Buchanan Ingersoll Professional Corp., Philadelphia, PA, for plaintiff.

Thomas H. Lee, II, Michael A. Schwartz, Dechert, Price & Rhoads, Philadelphia, PA, for Armondo Felicetti.

Alan A. Turner, Philadelphia, PA, for Louis Scarcia.

Donald K. Joseph, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for Louis Iatarola.

S. Gordon Elkins, Raymond Oechsler, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for Fidelity & Deposit Co.

## MEMORANDUM

JOYNER, District Judge.

Presently before the Court is the motion of defendants Armondo Felicetti and Louis Scarcia for partial summary judgment as well as the plaintiffs' cross motion for partial summary judgment.

On June 2, 1993, this Court granted defendants Felicetti and Scarcia's motion to amend their answers to include counterclaims for mandatory advancement and reimbursement of expenses and indemnification pursuant to the Bylaws of Star States Pennsylvania Corporation ("Star States"). By way of this motion defendants Felicetti and Scarcia seek advancement of expenses which will be incurred in defending this case, reimbursement for expenses plus interest already incurred by defendants in defending this case and reimbursement for expenses incurred by defendants in prosecuting their counterclaims and this motion for partial summary judgment. Likewise, plaintiff's seek partial summary judgment that defendant Felicetti and Scarcia are not entitled to advancement of expenses in connection with their efforts to seek such advancements and in defending this action.

### Standard

In considering a motion for summary judgment, the court must consider whether the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). This court is required to determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, all reasonable inferences must be drawn in favor of the nonmoving party. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2512. While the movant bears the initial burden of demonstrating an absence of genuine issues of material fact, the nonmovant must then establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990) *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### Background

Plaintiffs, Fidelity Federal Savings and Loan Association ("FidFed"), Wilmington Savings Fund Society, FSB ("WSFS") and Star States have brought this action against, among others, Armondo Felicetti who served as President of FidFed from approximately 1977 through February 1990 and Louis Scarcia who served as Vice President of FidFed from approximately September 1975 through May 1989. Felicetti and Scarcia also served as officers of FidFed's parent, Diversified Investment Group, Inc. ("DING") until February 2, 1990. In their complaint, plaintiffs allege that Felicetti and Scarcia participated in the conduct of FidFed through a pattern of racketeering activity, breached their fiduciary duties and committed fraud and civil conspiracy with respect to various construction loans made by FidFed while Felicetti and Scarcia were officers of FidFed.

On February 2, 1990, WSFS, through a subsidiary, Star States Acquisition Corporation, acquired DING, the parent of FidFed, with DING being the surviving corporation.

Finally, DING changed its name to Star States Pennsylvania Corporation. As part of the Agreement and Plan of Merger, as amended, the Bylaws of DING in effect on February 2, 1990 remained in full force and effect after the merger, thereby becoming the Bylaws of Star States.

These motions revolve around Article V of those Bylaws entitled "Personal Liability of Directors and Indemnification." Section 502 of the Bylaws provides for mandatory indemnification of directors and officers who were or are a party to a lawsuit as a result of their position with the corporation. That section reads in full:

*Mandatory Indemnification of Directors and Officers.* The Corporation shall, to the fullest extent permitted by applicable law, indemnify its directors and officers who were or are a party or are threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (whether or not such action, suit or proceeding arises or arose by or in the right of the fact that such director or officer is or was a director, officer, employee, general partner, agent or fiduciary of another corporation, partnership, joint venture, trust or other enterprise (including service with respect to employee benefit plans), against expenses (including but not limited to, attorneys' fees and costs), judgments, fines (including excise taxes assessed on a person with respect to any employee benefit plan) and amounts paid in settlement actually and reasonably incurred by such director or officer in connection with such action, suit or proceeding, except as otherwise provided in Section 504 hereof. A director or officer of the Corporation entitled to indemnification under this Section 502 is hereafter called a "person covered by the Section 502 hereof."

Section 503 provides:

Section 503. Expenses. Expenses incurred by a person covered by section 502 hereof in defending a threatened, pending or completed civil or criminal action, suit or proceeding shall be paid by the Corporation in advance of the final disposition of

such action, suit or proceeding upon receipt of an undertaking by or on behalf of such person to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the Corporation, except as otherwise provided by Section 504.

Lastly, Section 504 enumerates a number of circumstances under which the corporation's indemnification obligations are exonerated, including "if a final unappealable judgment or award establishes that such director or officer engaged in self-dealing, willful misconduct or recklessness." Bylaws Section 504(B).

On April 5, 1993, Scarcia wrote to Star States and requested that Star States indemnify him against all expenses incurred and to be incurred by him in defending himself against plaintiffs' claims and that Star States advance the cost of such defense. On April 6, 1993 Felicetti made a virtually identical request. In their letters, both Felicetti and Scarcia stated that in the event it shall ultimately be determined that they are not entitled to indemnification they undertake to repay the amounts advanced. On May 3, 1993, Star States replied that it had considered their requests, but had decided that the Corporation was not obligated, nor was it in the Corporation's best interest, to indemnify Felicetti and Scarcia or to advance their expenses in this litigation.

In support of their motion, Felicetti and Scarcia rely primarily on the plain language of the Bylaws. In opposition to Felicetti and Scarcia's motion and in support of their cross-motion, plaintiffs advance several arguments. First, plaintiffs contend that advancement of expenses is barred by federal law. Specifically, plaintiffs contend that the Office of Thrift Supervision regulations, 12 C.F.R. § 545.121, regarding indemnification of officers and directors of federal savings and loan associations preempts the Bylaws at issue here and that pursuant to those regulations advancement of expenses would not be warranted under these circumstances. Second, plaintiffs argue that under elementary contract law, the undertaking made by Felicetti and Scarcia is so illusory as to not constitute the necessary consideration to cre-

ate a binding contract. Third, plaintiffs contend that under these circumstances Pennsylvania Business Corporation Law permits the board of directors to exercise its discretion to determine the sufficiency of the undertaking and, based on that determination, whether the Corporation should pay the expenses of defending the suit as they become due. Fourth, plaintiffs allege that the advancement and indemnification provisions of the Bylaws are a nullity as to Felicetti because they were procured by fraud. Lastly, plaintiffs' argue that the Bylaws give the corporation the exclusive right to appoint the attorneys to represent Felicetti and Scarcia.

### Discussion

After careful consideration of all the arguments presented, we find that defendants Felicetti and Scarcia are not entitled to advancement of their expenses incurred in defending this lawsuit. In explaining our reasoning we will address only those arguments pertinent to this decision.

### A. Federal Law

As part of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 1421 *et seq.*, the Office of Thrift Supervision ("OTS") promulgated 12 C.F.R. § 545.121 to regulate the indemnification of directors, officers and employees of federal savings associations [1]. Subsection (b) of that regulation provides that a federal association may indemnify any person against whom an action is brought or threatened because that person is or was a director, officer or employee of the association for (1) the amount for which that person becomes liable under a judgment in the action and (2) reasonable costs and expenses, including attorneys fees actually paid or incurred by that person in defending or settling the action, or in enforcing his rights under this regulation if a favorable judgment

is attained in the enforcement of such action. 12 C.F.R. § 545.121(b)(1), (2).

Subsection (c) delineates the circumstances under which indemnification may be made. That is, only if there is a final judgment in the director's favor or, in the case of settlement or a judgment not wholly in his or her favor, if a majority of disinterested directors of the savings association determine that he or she "acted in good faith within the scope of his or her employment or authority as he or she could reasonably have perceived it under the circumstances and for a purpose he or she could reasonably have believed under the circumstances was in the best interests of the savings association or its members ... 12 C.F.R. § 545.121(c).

Subsection (e) deals with payment of expenses as they become due. According to subsection (e) the association may make advance payment for expenses incurred by the director provided a majority of the directors of the association conclude that the person may ultimately become entitled to indemnification and if the person agrees to repay any amounts advanced in the event he is ultimately determined not to be entitled to indemnification. 12 C.F.R. § 545.121(e).

■ Finally, subsection (f) details the exclusiveness of these provisions:

(f) *Exclusiveness of Provisions.* No savings association shall indemnify any person referred to in paragraph (b) of this section or obtain insurance referred to in paragraph (d) of the section other than in accordance with this section. However, an association which has a bylaw in effect relating to indemnification of its personnel shall be governed solely by that bylaw ...

12 C.F.R. § 545.121(f). Thus, while the OTS regulations are exclusive, if an association which has a bylaw which governs indemnification, the association is bound by the bylaw rather than the OTS regulation. *See* Bishop, *Law of Corporate Officers and Directors:*

---

1. The parties advance extensive arguments over whether DING is a federal savings association and thereby governed by the OTS regulations. Felicetti and Scarcia contend that DING is merely a holding company whereas, referring to the activities regulated by the OTS delineated in 12 C.F.R. § 584.2, plaintiffs contend that a loan holding company is equally required to comply with the OTS regulations as a savings and loan association. Because of our ultimate decision that 12 C.F.R. § 545.121(f) excludes DING from compliance with these regulations, we need not decide whether DING is otherwise governed by them.

*Indemnification & Insurance,* § 9.19 (1988 and 1992 Supp.)

■ Plaintiffs argue that because subsection (f) refers only to bylaws relating to *indemnification,* the portion of the DING Bylaws which makes advancement of expenses mandatory is superseded by the subsection (e) of the OTS regulation. That is, plaintiffs contend that expenses may be advanced only if a majority of the directors conclude that Felicetti and Scarcia will ultimately be entitled to indemnification. Plaintiffs' argument boils down to whether "advancement of expenses" is a subset of "indemnification" or whether the two terms are two totally separate forms of liability coverage. After careful analysis of the statute and the policies underlying an officer or director's right to indemnification, we conclude that the former is the proper interpretation.

The purpose of indemnification agreements is to encourage capable individuals to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve. *McLean v. International Harvester Co.,* 902 F.2d 372 (5th Cir.1990); *Mooney v. Willys–Overland Motors, Inc.,* 204 F.2d 888 (3d Cir.1953); 13 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 6045.01 (perm. ed. rev. vol 1990). The underlying public policy is that people who serve as corporate directors and officers, absent fraud or breach of fiduciary duties, should be able to perform their jobs free of the fear that they will be saddled with personal liability for corporate acts. Bishop, *supra* § 6.02[1]. Whether the monetary obligations commensurate with being personally liable for corporate acts arise up-front by way of defensive and litigation costs and expenses or whether they appear at the back-end by way of damages seems to be of no moment. *See* Bishop, *supra* § 6.03[8] (litigation involving corporate executives is often complex and expensive and the executive may be financially incapable of fully and adequately defending himself).

A close examination of the regulation itself indicates that the term indemnification is meant to be inclusive of advancement of expenses. First, the entire regulation is entitled "Indemnification of directors, officers and employees." Rather than promulgating two separate regulations, one relating to reimbursement of expenses after final judgment and the other relating to payment of expenses as they accrue, the drafters chose to include the advance payment provision as a subsection of the general regulation entitled "indemnification." Furthermore, in the "Exclusiveness of provisions" section, the drafters explicitly made compliance with the regulation's insurance provisions mandatory regardless of existing bylaws. In contrast, there is no such restriction regarding advancements. If the drafters intended to restrict the applicability of existing bylaws by prohibiting advancements except under the terms of the regulation, it could have specifically so stated in the "exclusiveness of provisions" section as it did in regard to insurance.

## A. Sufficiency of the Undertaking

■ Next, Plaintiffs argue that Felicetti and Scarcia's undertakings to repay are illusory in nature because the facts, as presented through the deposition testimony and various motions, indicate that Felicetti and Scarcia's ability to repay in the event they are not entitled to indemnification is negligible. However, neither the law nor the bylaws require that the undertaking be secured or supported by any consideration other than a mere promise to repay.

Most states have adopted legislation which is modeled after either the Delaware Business Corporation Law, Del.Code Ann, Tit 8, § 145, or the Model Business Corporation Act (1980 Revision). Pennsylvania's indemnification provision is a hybrid of the two. *See* Bishop, *supra* § 6.46. Section 145(e) or the Delaware Code states that advancements *may* be paid by the corporation. However, the Delaware Supreme Court recently determined that while the language of the statute is permissive, there is nothing to prohibit the corporation from otherwise contracting to make advancements mandatory. *Citadel Holding Corp. v. Roven,* 603 A.2d 818, 823 (Del.Supr.1992). In *Citadel Holding,* the court found that under the terms of an in-

demnity agreement with a director, advancements were mandatory and that the agreement merely reflected the intention of the parties to provide the director with protection beyond that provided by the statute as well as the bylaws. *Id.* In the instant case, the language of the DING Bylaws makes advancement of expenses mandatory once the director or officer has agreed to repay any amounts advanced if he is ultimately determined not be entitled to indemnification. As stated in the Delaware Supreme Court, "a corporation can grant indemnification rights beyond those provided by statute." *Hibbert v. Hollywood Park, Inc.,* 457 A.2d 339, 344 (Del.1983). Included in those expanded rights is the ability of the corporation to establish the terms of the advancement.

Section 8.53 of the Model Act that the "undertaking required ... must be an unlimited general obligation of the director but need not be secured and may be accepted without reference to financial ability to make repayment." Model Act § 8.53(b). The policy underlying this provision of the Model Act is that the wealth of a particular director or officer should not be a consideration when advancing expenses. Model Act § 8.53 Official Comment[2]. The DING Bylaws are silent as to whether the undertaking must be secured or otherwise conditioned on an ability to repay. Plaintiffs urge this Court to find that Felicetti and Scarcia did not, in fact, provide an undertaking because they provided no showing of an ability to repay.

The Third Circuit case of *Little v. MGIC Indemnity Corporation,* 836 F.2d 789 (3d Cir.1987) specifically addresses this issue. In that case, Little, an officer and director of a bank, was accused of certain misconduct by the bank. Unable to finance his own defense, he sought to enforce an advancement provision of a directors and officers liability insurance policy. That provision read as follows:

The Insurer may at its option and upon request, advance on behalf of the Directors or Officers, or any of them, expenses which they have incurred in connection with claims made against them, prior to disposition of such claims, provided always that in the event it is finally established that the Insurer has no liability hereunder, such Directors and Officers agree to repay to the Insurer, upon demand, all monies advanced by virtue of this provision.

*Id.* at 793. First the court found that whether advancements were optional under the policy was ambiguous and, therefore, construed the policy against the insurer, thereby making the advancements mandatory. Second, the court addressed the insurer's concern that requiring the insurer to make advance payments for defense costs would frustrate the intent of provision which denies indemnification for dishonest conduct by "making it virtually impossible for the insurer to recoup these payments if the insured is subsequently found to have been actively and deliberately dishonest." *Id.* at 796. While the court was cognizant of the insurer's reluctance to advance any monies, the court found that although collection may be difficult, the terms of the policy required that the insurer pay costs of the director's defense as they became due despite his apparent inability to repay. Other courts and legal authorities have similarly found that where the language of the bylaw or indemnification agreement is silent, the undertaking does not have to be secured. *Security America Corporation v. Walsh, Case, Coale, Brown & Burke,* 1985 WL 225 (N.D.Ill.1985) (advances required even though there is no guarantee that the defendants can ever repay); *Hibbert,* 457 A.2d at 345 (management's right to reimbursement of expense under Delaware law is not contingent on personal ability to meet the same); *Johnson v. Gene's Supermarket, Inc.,* 117 Ill.App.3d 295, 72 Ill.Dec. 778, 784, 453 N.E.2d 83, 89 (4 Dist.1983) (undertaking to repay advancements provid-

2. Felicetti and Scarcia claim that to deny advancements to penniless directors would violate public policy. Plaintiffs opposition to this argument presupposes a plaintiffs' verdict in the ultimate resolution of this case. Plaintiffs contend that advancing funds to dishonest directors itself violates public policy. However, the dishonesty of Felicetti and Scarcia is exactly what is being litigated here and cannot serve as a basis for the Court to deny Felicetti and Scarcia their rights under the Bylaws at least at this juncture.

ed adequate remedy at law to deny motion for preliminary injunction); *In re Central Banking System*, 1993 WL 183692 (Del.Ch. 1993) (nothing in indemnification agreement nor Delaware law requires undertaking to be secured or accomplished by a showing of indemnitee's financial responsibility); Bishop, *supra.* at § 6.03[8] (an undertaking by definition constitutes no more that a mere promise to repay); Veasey, Finkelstein & Bigler, *Delaware Supports Directors with a Three–Legged Stool of Limited Liability, Indemnification, and Insurance*, 42 Bus.Law. 399 (1987) (requirement that directors secure promise to repay would undermine policy of encouraging qualified people to serve as officers and directors).

In light of the specific language of the DING Bylaws and taking into consideration the policy underlying the advancement provisions of both the Delaware Code and the Model Act, after which the Pennsylvania Statute was modelled, we can find no reason to diverge from the plain language of the bylaws which requires no additional security for the undertaking other than a promise to repay. If the drafters had so desired the Bylaws could have conditioned the directors and officers rights to advancements upon the provision of appropriate security. *See In re Central Banking*, 1993 WL 183692 at *3 ("A corporation does have the undoubted power to require ... that the recipient advance indemnification furnish appropriate security or demonstrate financial responsibility as a condition to receiving advances."). Instead, the language of the Bylaws is silent on this issue, and in accordance with the decision in *Little*, 836 F.2d at 796, the plaintiffs are bound by the terms originally chosen.

### B. Pennsylvania Business Corporation Law

Plaintiffs argue that they are governed by the Pennsylvania Business Corporation Law, 15 Pa.C.S.A. § 1745 which makes advancement of expenses permissive rather than the Bylaws which makes such advancements mandatory.

■ Both the Model Act and the Delaware Law delineate the outer-limits of indemnification rights. That is, corporations can contract to expand the right to indemnification beyond that provided by the applicable statute. *See* Section 8.58, Official Comment, reprinted in *Model Business Corporation Act Annotated*, Vol. 2 (3d ed. 1985 and 1987 supp.) ("The standards for indemnification of directors contained in this subsection define the outer limits for which voluntary indemnification is permitted ...") and Del.Code § 145(f) ("the indemnification provided by this section shall not be deemed exclusive of any other rights to which those seeking indemnification may be entitled under any bylaw [or] agreement ..."). The Delaware Supreme Court specifically held that a corporation can "grant indemnification rights beyond those provided by the statute." *Hibbert*, 457 A.2d at 344; *see also PepsiCo, Inc. v. Continental Cas. Co.*, 640 F.Supp. 656, 661 (S.D.N.Y.1986) (Pepsico's bylaws supplanted the backstop provisions of Delaware corporate law). Pennsylvania's law is similarly nonexclusive. Section 1746 states that the "indemnification and advancement of expenses provided by, or granted pursuant to, the other sections of this subchapter shall not be deemed exclusive of any other rights to which a person seeking indemnification or advancement of expenses may be entitled under any bylaw [or] agreement ..." 15 Pa.C.S.A. § 1746(a). As to advancing expenses, the Committee Comment–1988 reads: "By its terms this section is permissive, and does not restrict other arrangements on the same subject authorized pursuant to 15 Pa. C.S.A. § 1746." Accordingly, while the Pennsylvania law establishes a floor for when expenses may be advanced, there is nothing to preclude a corporation from contracting through its bylaws, articles of incorporation or by private contract to provide for mandatory advancements.[3]

■ However, while the advancement provision of the Bylaws does not directly conflict with § 1745, it does run contrary to the fiduciary obligations imposed upon directors

---

3. The only ceiling placed on a corporations to otherwise provide for indemnification is contained in § 1746(b) which states that the "articles may not provide for indemnification in the case of willful misconduct or recklessness."

under both Pennsylvania law and the Bylaws. Section 512 of the Pennsylvania Business Corporation Law states:

A director of a domestic corporation shall stand in a fiduciary relation to the corporation and shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances.

15 Pa.C.S.A. § 512(a); *see also Enterra Corp. v. SGS Associates,* 600 F.Supp. 678, 684 (E.D.Pa.1985). The nature of the relationship between the directors and the corporation requires that the directors devote themselves to the affairs of the corporation with a view toward promoting the best interests of the corporation. *Committee of Unsecured Creditors of Specialty Plastic v. Doemling,* 127 B.R. 945, 951 (Bkrtcy. W.D.Pa.) affirmed 952 F.2d 1391 (3d Cir. 1991). Unlike the indemnification provisions of the Pennsylvania Business Corporation Laws, the standards of care imposed upon directors under Pennsylvania law cannot be abrogated by the individual bylaws of a corporation. *Pepper v. Litton,* 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939) (directors' dealings with corporation subject to strict scrutiny); *In re Specialty Tape Corp.,* 132 B.R. 297, 301 (Bkrtcy.W.D.Pa. 1991) (directors' fiduciary duties require them to act so as to promote common interests of shareholders); 3 Fletcher, *Supra.* § 850 (Supreme Court rejects lax view of fiduciary obligations and insists upon their scrupulous observance).

Moreover, the DING Bylaws reflect the requisite deference to the Pennsylvania law in the preamble which states, "These Bylaws are supplemental to the Pennsylvania Business Corporation Law and other applicable provisions of law, as the same shall from time to time be in effect." Further, § 501(a) of the Bylaws acknowledges the mandatory duties of the directors by denying a director his rights to indemnification in the event he breaches or fails to perform his duties under Section 8363 the Pennsylvania Directors' Liability Act. The section referred to in the Bylaws, 42 Pa.C.S.A. § 8363, was repealed in December 1990 but related to standard of care, justifiable reliance and personal liability of directors. For the subject matter which was contained in former § 8363 the Historical and Statutory Notes specifically refer to 15 Pa.C.S.A. § 512, the present provision imposing fiduciary duties upon directors.

Thus, while the language of § 503 of the Bylaws makes advancement of expenses mandatory, it cannot supersede the overriding duty of the directors to act in the best interest of the corporation. The directors cannot shirk the duties imposed upon them by statue as well as by conflicting provisions of the Bylaws. It is elementary contract law that when interpreting a specific term of a contract, the entirety of the contract must be taken into consideration. *Capitol Bus Co. v. Blue Bird Coach Lines, Inc.,* 478 F.2d 556, 560 (3d Cir.1973); *Kay v. Thrift and Profit Sharing Plan for Employees of Boyertown Casket Co.,* 780 F.Supp. 1447, 1455 (E.D.Pa.1991); *First Philadelphia Realty Corp. v. Albany Savings Bank,* 609 F.Supp. 207, 210 (E.D.Pa.1985). In this case, the Ding/Star States directors are backed into a corner by simultaneously being required by § 503 of the Bylaws to advance the expenses of this lawsuit to Felicetti and Scarcia and being bound by their fiduciary duties to act only in the best interest of the corporation, actions which the directors have definitively decided are irreconcilable.

Unlike the undertaking issue addressed above, this case is distinguishable from the Third Circuit's *Little* case. *Little,* 836 F.2d 789. In that case, the directors were not torn by conflicting duties faced by the DING/Star States directors because the obligation to advance the costs of the litigation was with the insurance company rather than the Bank itself.[4] Further, while we are not bound by

---

4. As to whether the Bank would have been obligated to advance the funds, the court stated no more than, "[f]aced with the prospect of having to defend several lawsuits and unable, for obvious reasons, to obtain financial assistance from [the Bank], Little sought to have [the insurance

the *Citadel* decision, that opinion is also distinguishable from the situation here presented. The dispute in *Citadel,* 603 A.2d 818, arose from the provisions contained in an indemnity agreement between Citadel, the employing savings and loan association, and Roven, the director accused of wrongdoing. The indemnity agreement was specifically intended to provide Roven with greater protection than that provided by the certificate of incorporation and was a separate contract. *Id.* at 820. The Citadel directors were not presented with the same internal inconsistency of the Bylaws that the DING/Star States directors are presently facing. In the instant case, the directors are instructed in the preamble and § 501 of the Bylaws to comply with their fiduciary obligation to act only in the corporation's best interest while at the same time § 503 of the Bylaws mandates that they advance expenses which they have already determined is not in the best interest of the corporation. In *Citadel,* the indemnification agreement was clear that advancements were mandatory and that it was an agreement separate and apart from the articles of incorporation. Here, the Bylaws must be read as a whole to resolve the quandary into which the DING directors have been placed and after having done so, the Court concludes that the only reasonable interpretation requires that the directors abide by their fiduciary obligations to act only as they believe is in the best interest of the corporation. Accordingly, DING is not required to advance the funds necessary for Felicetti and Scarcia to defend themselves in this action.

Because of our above conclusion, at this stage in the proceeding we need not address plaintiffs' last two arguments regarding Felicetti's alleged fraud in formulating the Bylaws and plaintiffs' right to appoint counsel for the directors.

An appropriate order follows.

### ORDER

AND NOW, this 4th day of August, 1993 upon consideration of the Motion of Defen-

dants Felicetti and Scarcia for Partial Summary Judgment and Plaintiffs' Cross–Motion for Partial Summary Judgment, it is hereby ORDERED that Plaintiffs' Motion is GRANTED and Defendants Felicetti and Scarcia's Motion is DENIED.

---

company] assume the costs of his defense under the terms of the policy." *Little,* 836 F.2d at 791. Unfortunately, the reason for the Bank's failure to advance the funds is not so clear and we are left to wonder whether the Bank's decision not to make advancements was based on its bylaws, Pennsylvania law or some other authority.