# Brandywine Lanes, Inc. *v.* Pittsburgh National Bank (et al., Appellants).

500

Argued March 20, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused February 20, 1970.

*Vincent M. Casey,* with him *G. W. Musser,* and *Margiotti & Casey,* for appellants.

*Joseph N. Mack,* with him *Edgar J. Cooke* and *Wilbur F. Galbraith,* for appellee.

OPINION BY MR. JUSTICE JONES, May 22, 1970:

Although I agree with the result reached in the opinion of Mr. Justice O'BRIEN, I desire to express my views as to what I believe to be the nature of Brandywine's interest and what further disposition should be made with respect thereto.

The record shows that when Brunswick first sold the alleys to E. Z. Lanes (in effect, Tolan), Brunswick retained a purchase money security interest pursuant to §9-107 of the Uniform Commercial Code (Act of April 6, 1953, P. L. 3, §9-107, 12A P.S. §9-107) (hereinafter cited as UCC). After Tolan defaulted in his payments, Brunswick brought an action in replevin, as authorized by UCC §9-503, and obtained a default judgment.

At this point, Dean and Schulz agreed to help Tolan, and paid Brunswick $15,000 in settlement of Brunswick's claim. In return, Dean and Schulz each received a one-third interest in the new corporation, Brandywine Lanes, Inc. They also received an assignment of Brunswick's security interest to their assignee, Mellon Bank.

The central issue in this litigation involves whether Brandywine Lanes, Inc. acquired ownership of the alleys when the corporation was formed. The record

clearly shows that Tolan did not convey the alleys to Brandywine, and Brunswick could only transfer, pursuant to UCC §9-504(4), the interest it then held— which was a security interest. This transaction did not, therefore, give Brandywine ownership of the alleys, but only a security interest and the right to "maintain replevin to recover the property." 10 *Std. Pa. Practice*, §15, p. 440 (1963).

Tolan, therefore, owns the alleys subject to the outstanding security interest of Dean and Schulz. Unless Tolan elects to redeem the alleys, pursuant to UCC §9-506, Brandywine should be permitted to dispose of them as provided by UCC §9-504, with any proceeds in excess of Brandywine's security interest, costs and special damages being returned to Tolan.

The judgment is affirmed only insofar as it entitles Brandywine to take possession; the judgment for damages is vacated.

Mr. Chief Justice BELL, Mr. Justice COHEN, and Mr. Justice POMEROY join in this opinion.

---

CONCURRING OPINION BY MR. JUSTICE O'BRIEN:

On June 29, 1955, Bernard J. Tolan (the additional defendant here) and Saul Snitkin, doing business as E. Z. Lanes, purchased from the Brunswick Corporation [Brunswick] by means of a conditional sale contract certain bowling alleys plus related equipment which were thereafter installed at 224 Eighth Street, Braddock, Pennsylvania. E. Z. Lanes paid $30,000.00 down, leaving a balance of some $71,000.00. Snitkin later dropped out of the partnership, and at the times involved in the instant action, Tolan was the surviving partner of E. Z. Lanes.

By late 1960 or early 1961, it was obvious that E. Z. Lanes could not pay for the alleys and had in fact defaulted on the payments called for by the conditional

sale contract. In April of 1961 Brunswick instituted a replevin action without bond against E. Z. Lanes in the Court of Common Pleas of Allegheny County. After service upon the partner in charge, Tolan, no answer having been filed, Brunswick took a default judgment for possession of the equipment.

The testimony at trial reveals that, through various negotiations, it was arranged that John R. Dean and R. D. Schulz would help to bail Tolan out of difficulty. The plan was to form a corporation, to be named Brandywine Lanes, Inc. [Brandywine], in which Tolan, Dean, and Schulz would each own a one-third interest. Dean and Schulz, through their lawyers, arranged with Brunswick to settle Brunswick's claim against E. Z. Lanes for $15,000.00. Mellon National Bank & Trust Company agreed to lend Dean and Schulz the $15,000.-00. With these arrangements worked out, the corporation could be formed. In the meantime, Brunswick was paid the $15,000.00, and it delivered to the corporation's nominee, Mellon Bank & Trust Company, an assignment of the default judgment, which was held by the bank as security for the loan. With money provided by Dean and Schulz, other creditors of E. Z. Lanes were also paid, and Brandywine took over the operation of the business.

Friction then developed between Tolan and his investors. Tolan, claiming ownership of the bowling alleys and equipment, entered into an agreement with James F. Shearer for the removal and storage of the alleys and equipment in Indiana County, Pennsylvania. Workmen and equipment of the James Drilling Corporation were used to remove the alleys and equipment and to transport them to buildings owned by Shearwood Terrace Development Corporation. The James Drilling Corporation and the Shearwood Terrace Development Corporation are primarily owned and are controlled by James F. Shearer.

Brandywine, appellee here, brought this action of replevin without bond in the Court of Common Pleas of Indiana County against Shearer, the above-named corporations, and two other corporations which were let out of the case. Tolan was brought in as an additional defendant. The jury returned a verdict in the amount of $65,000.00 in favor of plaintiff against the defendants and additional defendant, and in favor of the defendants against the additional defendant. After denial of motions for new trial and judgment n.o.v. by both the defendants and the additional defendant, this appeal followed.

Although appellants claim that the proof does not conform to the pleadings, they made no such claim at trial or in the post-trial motions and therefore waived it. *Graham v. Jonnel Enterprises, Inc.*, 435 Pa. 396, 257 A. 2d 256 (1969); *Jerome v. Laurel Pipe Line Co.*, 197 Pa. Superior Ct. 131, 177 A. 2d 150 (1962).

Appellant corporations also contend briefly that the evidence does not support a finding that they, as opposed to Shearer individually, are liable. I find no merit in this contention.

Appellants' real contention on appeal is that replevin is improper because appellee corporation does not hold title to the alleys and equipment sought to be replevied. Our response to such a contention must of necessity be involved.

In the first place, the parties themselves have not been able to grasp the true significance of the title concept under the Uniform Commercial Code, Act of April 6, 1953, P. L. 3, 12A P.S. §§1-101 et seq. Brandywine relies upon §2-401(2) which provides for the passage of title at specified times *"unless otherwise explicitly agreed."* (Emphasis added). Brandywine points to a provision of the conditional sale contract between Brunswick and E. Z. Lanes as such an agreement. That states: "Title to said property shall not

pass to purchaser until the total amount payable as herein provided is actually paid in cash." Thus, says appellee, Brunswick had title when it won the replevin action, and could pass title to Brandywine.

Such a view, however, ignores the language of §2-401(1):

". . . Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. . . ."

Moreover, it ignores §9-202 as well:

"Each provision of this Article with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor."

In other words, Brunswick may have had the paper title to the alleys, but E. Z. Lanes (Tolan) actually possessed the equity in them, subject to Brunswick's security interest. Thus, Tolan's rights were not cut off merely as a result of the failure to make payments and the default judgment.

Nor did appellee acquire the entire interest in the property in any other way. The court below, in its opinion, indicated that what he referred to as title and what we shall call ownership, for lack of a better word, was in appellee by virtue of §9-504(4) of the Code. This subsection provides:

"When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interests. . . ."

The court held that Brandywine owned the alleys, having purchased them from the secured party, Brunswick.

However, that is not a correct statement of what transpired. Appellee (or its nominee Mellon Bank)

did not purchase the collateral itself when the corporation was formed in 1961. It was merely given an assignment of Brunswick's judgment for possession. There is no indication whatsoever that the requirements of §9-504(3) for commercial reasonableness, such as notification to the debtor, were followed, and what is most important, there was no bill of sale. The giving of a bill of sale some two years later, after the alleys were removed by appellants, hardly qualifies to transform an assignment of a judgment into a sale of collateral. Thus, Tolan's ownership rights in the property remained, subject to the judgment for possession in the hands of Brandywine or its nominee.

The court below also seemed to rely in part on an estoppel concept to find that Tolan had given up all ownership rights in the alleys (except what he might own through his share of the corporation). The court stated:

"Tolan actively participated in the incorporation of plaintiff, sought the financial aid of Dean and Schulz, knew that plaintiff had entered into a lease for the premises in which the alleys and equipment were located and consented and acknowledged that plaintiff had taken possession of said premises. Tolan cannot accept the benefits of plaintiff and now say that he did not relinquish any interest he had in said alleys and equipment to the plaintiff."

Even if we accept the facts as stated by the court below,[1] this estoppel theory cannot be used to support appellee's ownership. For it was not only not pleaded, but the case was not even tried on this theory, nor was the jury so charged. Edgar J. Cooke, Esquire, the attorney for Brandywine during the period of negotiations, testified that he never prepared a bill of sale

---

[1] We have grave doubts that the memorandum relied upon by Brandywine constitutes a lease.

from Tolan to Brandywine because he did not believe Tolan owned the alleys. Nonethless, Tolan was given a one-third interest, in an arm's length transaction. By Mr. Cooke's testimony, it is apparent that Tolan's one-third interest was not contingent upon his contributing the alleys. Brandywine's apparent mistake as to the ownership of the alleys should not serve to eradicate Tolan's interest, which could conceivably be quite valuable, alone much more valuable than the contributions of the others. For instance, if the alleys were really worth the $65,000.00 value placed upon them by the jury (appellee's expert stated they were worth $130,000.00), then Tolan's equity above the approximately $20,000.00 owed to Brunswick would have been about $45,000.00.

Thus, in no way can it be said that Brandywine was the owner of the alleys, even if it did have paper title. Nonetheless, neither ownership nor title is requisite in an action of replevin. Replevin is a possessory action. "The plaintiff in a replevin action must show a right to possession and a general or special property right in the property." 31 P.L.E. Replevin, §6; cf. Int. Elec. Co. v. N.S.T. Metal Prod. Co., Inc., 370 Pa. 213, 88 A. 2d 40 (1952). Brandywine clearly had these, by virtue of its assignment of the judgment for possession and the underlying security interest in the property. The fact that Brandywine did not have complete ownership is irrelevant; its right to possession is crucial to the maintenance of an action of replevin.

However, that still leaves a problem with regard to the relief that can be granted. Rule 1085 of the Pennsylvania Rules of Civil Procedure provides, in relevant part:

"If judgment is entered after trial for a party not in possession of the property, the judgment shall de-

termine (1) his right to recover possession of the property, (2) the money value of the property, and (3) the amount of any special damages sustained."

While it is entirely proper under the circumstances of this case to permit Brandywine to recover possession of the alleys,[2] it should be apparent that Brandywine would be receiving a huge windfall if permitted to recover the full value of the alleys. "[I]n an action for replevin where a judgment for the value of the property or alternative judgment for the value is rendered, the general rule is that the prevailing party, having but a special interest in the property in controversy, may recover as against another also having an interest in the property the extent of his special or limited interest." 77 C.J.S. Replevin, §272(a). The precise issue involving a conditional sales contract has apparently never been litigated in Pennsylvania, although the Pennsylvania courts have recognized, in an analogous situation involving a lien, that the party entitled to possession is not always also entitled to the full value of the property. *Baranofsky v. Weiss,* 120 Pa. Superior Ct. 126, 182 Atl. 47 (1935).

Courts of several other jurisdictions have considered the conditional sale situation. In *Road Material and Equipment Co. v. McGowan,* 229 Miss. 611, 91 So. 2d 554, 556 (1956), the court spoke directly to the instant situation:

"[Replevin] is a possessory action, the gist of which is the right of possession in plaintiff. The primary relief sought is the return of the property in specie; damages are merely incidental. . . .

"It is well established that where the plaintiff has a limited interest in the chattel, by way of security for

---

[2] Moreover, appellants may well be in contempt of the judgment for possession entered in the original replevin action brought by Brunswick.

payment of any balance due on the purchase price, the judgment should be for return of the property or, in the alternative, for the value of plaintiff's interest therein measured by the balance due with interest and damages."

To similar effect is *Frontier Motors v. Chick Norton Buick Company*, 78 Ariz. 341, 279 P. 2d 1032, 1035 (1955), a case in which the conditional vendor contended that it was entitled to either possession of the car being replevied, or its full value. The conditional vendee responded that the vendor was entitled only to the value of the car minus the payments made by the vendee. The court quite properly held that "in a replevin action a plaintiff having only a special interest in the goods in controversy cannot recover more than the amount of his special interest. In other words, the plaintiff is only entitled to be made whole." Cf. *Tillis v. Calvine Cotton Mills, Inc.*, 251 N.C. 359, 111 S.E. 2d 606 (1959); *State v. Justice*, 109 So. 2d 761 (Fla. 1959).

Brandywine is entitled to possession of the alleys. However, to affirm a judgment for the full value of the goods would be to give Brandywine a windfall.

Mr. Justice EAGEN and Mr. Justice ROBERTS join in this opinion.