Brandywine Lanes, Inc., Appellant, *v.* Pittsburgh National Bank, Appellant.

Argued April 15, 1971.  Before Wright, P. J. Watkins, Montgomery, Jacobs, Hoffman, Spaulding, and Cercone, JJ.

reargument refused January 11, 1972.

*Edgar J. Cooke,* with him *Joseph N. Mack,* for plaintiff.

*James M. Arensberg,* with him *Everett K. Dilworth,* and *Tucker, Arensberg & Ferguson,* for defendant.

OPINION BY HOFFMAN, J., November 11, 1971:

This action in replevin without bond involves a complicated factual situation which has already resulted in one appellate decision. *Brandywine Lanes, Inc. v. Pittsburgh National Bank,* 437 Pa. 499, 264 A. 2d 377 (1970).[1] The relevant history of this case dates back to 1955. In that year one Bernard J. Tolan (Tolan) signed a ten-year lease with the defendant Pittsburgh National Bank's (Bank) predecessor for the use of a certain building. Intending to operate a restaurant-bowling alley, Tolan purchased, subject to various security interests, twenty-six bowling lanes and a quantity of bar and restaurant equipment. He then began business operations.

In 1961 the business ran into financial difficulties and Tolan was unable to pay the rent and defaulted on his installment payments on both the bowling alleys and the bar and restaurant equipment. As a result, each of the equipment vendors obtained judgments for possession of the equipment in which they had security interests.

In the midst of this financial crisis, two men, John R. Dean (Dean) and R. D. Schulz (Schulz) entered

---

[1] Although this case bears the same caption as the instant appeal, the Pittsburgh National Bank, defendant in this action, was not a party to the proceedings resulting in the aforementioned Pennsylvania Supreme Court opinion. The Bank was initially named as a defendant, but on its motion, it was let out of that case which was brought in the Indiana County Court of Common Pleas.

the picture. In order to alleviate the financial crisis, they caused the plaintiff corporation, Brandywine Lanes, Inc. (Brandywine), to be incorporated with Dean, Schulz and Tolan each owning a one-third interest in it. The corporation and the newcomers borrowed funds and settled the claims which the vendors had in the alleys and restaurant and bar supplies.[2] Brandywine then entered into a "memorandum of understanding" with the Bank, whereby Brandywine would rent the building for two years, still subject to Tolan's original lease. The corporation thereupon began operating the business.

Friction soon developed between Tolan and the two other owners of Brandywine. Arrangements to buy out Tolan (the "escrow agreement") were unsuccessful. Meanwhile, the corporation was in financial difficulty. It closed down operations and relinquished possession of the premises. Tolan, however, remained in possession and ran the restaurant. The Bank attempted to oust him under the 1955 lease for nonpayment of rent, but Tolan's possession under that lease was continued by various court orders.

When Dean, Schulz and an employee of the Bank made a physical inventory of the leased premises, pursuant to the escrow agreement, which subsequently fell through, certain items of personalty were found to be missing. The locks of the building were changed by the real estate manager of the bank. Then, as the lower court found "[a] key to the premises was tendered to Messrs. Dean and Schulz and this tender was refused. At this time the [Bank] was in at least a *de facto,* if not *de jure,* possession of the premises and its contents. This changing of the locks was accomplished on August

---

[2] These security interests and judgments for possession were eventually transferred to the corporation, making the corporation, in effect, the holder of the security interests and judgments for possession.

29, 1962." Tolan later accepted a key tendered by the Bank.

After collapse of the escrow agreement, on October 18, 1962 Brandywine entered its lawsuit in replevin without bond against the Bank. Subsequently, a Bank representative who was checking the premises, discovered that Tolan had entered into an agreement with a certain contractor who was in the process of removing the bowling alleys. Although eleven of the twenty-six alleys were still in place, the Bank took no action and did not inform Brandywine.

Eventually, the Bank was able to oust Tolan and regain total possession of the leased premises. This building was later sold with the restaurant and bar equipment still inside.

The instant action in replevin without bond was tried by a judge sitting without a jury. The court found that Brandywine at all relevant times held complete legal title to the bowling alleys (and their related equipment) as well as to the bar and restaurant equipment. The court also held that Brandywine was entitled to immediate possession and control of the alleys, their related equipment and the bar and restaurant equipment. Further the court found that as it affected "the interests of the parties concerned in this matter, possession of the bowling alleys and the restaurant and bar equipment was in the [Bank]."

The court entered the following order:

"(a) The plaintiff, Brandywine Lanes, Inc., is entitled to recover immediate possession of the eleven bowling alleys [which were taken after the bank became aware of the fact that Tolan was in the process of having them removed] and restaurant and bar equipment and fixtures from the defendant, Pittsburgh National Bank; and

"(b) That the money value of the bowling alleys and the restaurant and bar equipment and fixtures is $31,750.00; and

"(c) That the plaintiff, Brandywine Lanes, Inc., is entitled to special damages in the sum of $12,065.00 which it has sustained from the defendant, Pittsburgh National Bank; and

"(d) That the plaintiff, Brandywine Lanes, Inc., is entitled to interest from the date of the entry of the judgment, to-wit, August 8, 1969, at the lawful rate."

Both parties appealed from this order. Brandywine argues, *inter alia,* that it should have received the value of all the bowling alleys in place. The Bank contends that Brandywine is not the "owner" of either the bowling alleys or the restaurant and bar equipment and further that Brandywine only has a right to possession, not damages.[3]

These contentions must be considered in relation to the decision of the Supreme Court of Pennsylvania in the first *Brandywine* case. In that appeal the Court had before it the question of whether Brandywine acquired ownership of the alleys when the corporation was formed. The same evidence that was presented in the instant action was fully considered in the earlier appeal. At that time the Court specifically held that

---

[3] The Bank also contends that a certain estate, of which the Bank is administrator, has an outstanding landlord's lien against not only the bowling alleys, but also against the bar and restaurant equipment. It is thus maintained that as against the defendant Bank, Brandywine had no immediate right to possession.

It should first be noted that in this replevin action the Bank was sued as an individual not as administrator, and the Bank has not argued that it is liable only in a representative capacity. But even if the lien were to run in favor of the Bank, we do not have to consider the significant questions of priority thereby raised because we agree with the lower court that the estate has waived its lien by not pleading it. Compare, Pennsylvania Rules of Civil Procedure, Rule 1082(a) with Rule 1030 and Rule 1032.

the assignment to the corporation of the security interest and judgment for possession of the bowling alleys did not constitute conveyance of the complete legal title to the alleys. It only gave Brandywine "a security interest and the right to 'maintain replevin to recover the property.' " 437 Pa. at 502, 264 A. 2d at 379.

The Bank contends that the lower court was bound by this decision under the doctrines of *stare decisis* and collateral estoppel. Though this position undoubtedly has merit at least with respect to the bowling alleys,[4] we do not feel it necessary to reach this issue. Whether or not the decision of the Supreme Court in the first *Brandywine* case is binding precedent, there can be no doubt that under the provisions of the Uniform Commercial Code[5] Brandywine only had a security interest, not total ownership, in both the bowling alleys and the restaurant and bar equipment.

The record clearly reveals that at the time the corporation was formed, the only interests which were transferred, or attempted to be transferred, by the original holders of the security interests were the security interests themselves and an assignment of the judgments for possession.[6] We believe that both the ma-

---

[4] "*Stare decisis* simply declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different. . . ." *Burke v. Pittsburgh Limestone Corp.*, 375 Pa. 390, 394, 100 A. 2d 595, 598 (1953). Here we are involved with the same type of action (replevin without bond) for the same property (the bowling alleys) with the same plaintiff (Brandywine). In addition the evidence as to both the plaintiff's interest in the bowling alleys is identical in both cases.

[5] Act of April 6, 1953, P. L. 3, 12A P.S. §1-101 et seq.

[6] It is not necessary to discuss whether the original holders of the security interests could have transferred more than a security interest to Brandywine pursuant to UCC §9-504, since in fact a sale of collateral was not attempted in either case, at the time the transfer of the security interests was made.

jority and concurring opinions in the first *Brandywine* case support such a conclusion. While that case dealt only with the bowling alleys, a similar situation is presented with regard to the restaurant and bar equipment. As with the bowling alleys, it is clear that Brandywine has a security interest in the restaurant and bar equipment but that Brandywine does not have complete legal title.

The lower court thus erred in holding that Brandywine "owned" the bowling alleys and the restaurant and bar equipment, and in awarding Brandywine the full value of any of the property. However, as we have stated, Brandywine did have a security interest in and a right of immediate possession of the property by virtue of the assignment of the judgments. This security interest, though not full ownership, when coupled with a right of immediate possession, satisfies the requirements for maintaining an action in replevin[7] and entitled Brandywine to maintain the present replevin action against the Bank.

Under the Pennsylvania Rules of Civil Procedure Brandywine had a choice as to what form of action in replevin it would bring. Instead of posting a bond and having the property seized, Brandywine chose to bring an action in replevin without bond. This form of action was established by the Pennsylvania Rules of Civil Procedure, Rule 1073. The Procedural Rules Committee Note explains the purpose of the rule as follows: "Under this rule, the plaintiff in replevin has the option of having the sheriff seize the property at the

---

[7] A plaintiff in a replevin action need not set up title good against the whole world, but must show good title as against the defendant in possession. *Gensbigler v. Shawley*, 162 Pa. Superior Ct. 642, 60 A. 2d 360 (1948). In addition to good title, the plaintiff must show that he is entitled to immediate possession of the property in question. *International Electronics Co. v. N. S. T. Metal Products Co.*, 370 Pa. 213, 88 A. 2d 40 (1952).

commencement of the action or of permitting the property to remain in the possession of the defendant until a later time in the action or until after judgment is entered in favor of the plaintiff. *If the plaintiff does not seek to gain possession of the property before the entry of judgment in his favor, he is not required to file a bond and affidavit of value. In this case, the action simply determines his right to the property and its value. Upon execution, the plaintiff has the option of obtaining the specific property or of issuing execution for its money value, even though it could be specifically recovered."* (Emphasis added.)

Rule 1085(b) of the Pennsylvania Rules of Civil Procedure sets forth what a judgment after trial, for a party not in possession of the property, shall determine. The judgment in such a case, which includes the situation presented here, shall determine (1) the plaintiff's right to recover possession of the property; (2) the money value of the property in question, and; (3) the amount of any special damages sustained.

Under this rule the lower court correctly determined that Brandywine had a right to recover possession of the bowling alleys and the restaurant and bar equipment. The Bank was shown to have no interest in any of these goods, and as has been previously stated, Brandywine has a right to immediate possession.

However, the trial judge incorrectly found that Brandywine "owned" the alleys and bar and restaurant equipment and thus was entitled to recover the *total value* of all this property. This would result in a windfall for Brandywine since it only owns a security interest in the property. It is our view that the court should have awarded Brandywine the *value of its security interests* in the property in question.[8] Brandy-

---

[8] It should be noted that if Brandywine were to obtain possession of the bowling alleys and restaurant and bar equipment all it

wine thus has the choice, upon execution of obtaining the specific property (which is no longer available) or of issuing execution for the value of its security interest.

Under Rule 1085(b), supra, the court must determine the money value of the property—here the value of Brandywine's security interests. In regard to the bowling alleys, Brandywine maintains that it is entitled to its interest in all twenty-six of the lanes. With this conclusion we cannot agree. We believe that the lower court was correct in holding that the Bank is responsible only for the eleven alleys removed after it had actual notice that Tolan was taking the alleys.

At the beginning of the action, Brandywine chose not to file a bond and cause the alleys to be immediately replevied. If it had taken this course of action, Tolan would have had no opportunity to remove the alleys. Instead, Brandywine proceeded in replevin without bond and thereby agreed that the property should remain in the Bank's custody during the pendency of the action.

The record clearly reveals that the Bank made periodic inspections of the premises and that it was during such an inspection that Tolan was discovered to be removing the alleys. Up until that time the Bank acted reasonably and with due care for the property in its possession. After the inspection, it had actual notice that the lanes were being removed and thus had a duty to take greater care to see that the property in its custody was preserved. Since the Bank took no action to preserve the eleven remaining alleys, we believe that

would be entitled to keep would be the value of its security interests plus costs and damages. This would be true whether Tolan, the "owner", redeemed the collateral pursuant to UCC 9-506 or whether Brandywine disposed of the property under UCC 9-504. Cf. *Brandywine Lanes, Inc. v. Pittsburgh National Bank*, supra at 502, 264 A. 2d at 379.

it thereby incurred liability to Brandywine for its interest in the eleven lanes. Additionally, considering the unique factual situation presented by this case, we believe that the court correctly concluded that equitable principles dictate this result.

We therefore affirm the lower court's decision that Brandywine is entitled to immediate possession of the property. We reverse that part of the decision of the trial court awarding Brandywine the full value of the property. The record is remanded for a determination of the value of Brandywine's security interest in the eleven bowling alleys and the restaurant and bar equipment and for an award based on such findings. Further, we believe that the court's award of special damages and interest, allowed under Rule 1085(b) of the Pennsylvania Rules of Civil Procedure, supra, is fair and equitable and we affirm that part of the court's award allowing special damages and interest.