J-S06031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHAWNEE BALTRUSAITIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SYDNEY SCHILPP | : | No. 920 MDA 2022 |

Appeal from the Order Entered June 3, 2022
In the Court of Common Pleas of Wyoming County Civil Division at
No(s): 2022-00414

BEFORE:   STABILE, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED: MARCH 21, 2023**

Appellant Shawnee Baltrusaitis appeals from the June 3, 2022, order entered in the Court of Common Pleas of Wyoming County, which denied her petition for a preliminary injunction.[1]  After a careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] It is well-settled that an order denying or granting a preliminary injunction is an interlocutory order appealable as of right pursuant to Pa.R.A.P. 311(a)(4). **See** Pa.R.A.P. 311(a)(4) ("An appeal may be taken as of right…from…[a]n order that grants or denies…an injunction[.]"); **In re: Trust under Deed of Trust of Nell G. Jack, Settlor dated May 29, 1981**, 284 A.3d 451 (Pa.Super. 2022) (holding order denying or granting preliminary injunction is immediately appealable as of right). To the extent Appellee contends the trial court's order is not appealable as of right because it is subject to the exception under Rule 311(a)(4)(ii), which provides generally that an order granting or denying an injunction is not immediately appealable if it was entered "[a]fter a trial but before entry of the final order[,]" we note the trial court did not hold a trial on the claims raised in Appellant's civil

*(Footnote Continued Next Page)*

The relevant facts and procedural history are as follows: On May 23, 2022, Appellant filed a complaint averring that, on November 30, 2020, she purchased a male Rottweiler ("Mushu") for herself using her own funds, and she arranged to have Mushu transported to Pennsylvania from Arkansas at her own expense. Appellant averred she never gifted, sold, or transferred ownership of Mushu to any other person, and "[i]t was common knowledge in the community that [she] was the only owner of Mushu." Appellant's Complaint, filed 5/23/22, at ¶ 11.

Appellant averred Appellee was romantically involved with her son, Tyler Baltrusaitis ("Tyler"), and resided with him in a house located in Factoryville, Pennsylvania. Appellant owned the Factoryville house, and Appellee paid rent to Appellant. Mushu spent time at this house in Factoryville. When the young couple's romantic relationship ended, Appellee moved out of the Factoryville house on April 28, 2022, taking Mushu with her. Appellant averred that, despite repeated requests, Appellee refused to return Mushu. Accordingly, Appellant filed a civil complaint raising claims of conversion and replevin, as

complaint. **See** Pa.R.C.P. 1038 (pertaining to trial without jury); **Morgan v. Millstone Resources Ltd.**, 267 A.3d 1235 (Pa.Super. 2021) (discussing the application of Pa.R.A.P. 311(a)(4)(ii)). Rather, the trial court held a hearing limited to Appellant's petition for special relief, *i.e.*, a preliminary injunction. **See** Pa.R.C.P. 1531 (pertaining to hearings on requests for preliminary injunctions); **In re: Trust under Deed of Trust of Nell G. Jack, Settlor dated May 29, 1981**, *supra* (noting a court will ordinarily issue a preliminary injunction only after written notice and hearing).

well as seeking a permanent injunction directing the return of Mushu to Appellant.

Additionally, on May 23, 2022, Appellant filed a petition for a preliminary injunction wherein she made factual allegations similar to those in her complaint. Appellant requested the trial court enter a preliminary injunction ordering the immediate return of Mushu to the Factoryville house and/or otherwise to Appellant. On June 3, 2022, the trial court held a hearing on Appellant's petition for a preliminary injunction.

At the hearing, Appellant confirmed Appellee was romantically involved and resided with Tyler in Appellant's home in Factoryville. When Appellee moved in, Tyler had two cats. N.T., 6/3/22, at 6-7. Appellant indicated that, in 2020, outside the presence of Appellee, she discussed with Tyler the possibility of purchasing a dog. *Id.* at 9. She was going through a divorce and chemotherapy treatment, and she wanted Tyler to have something positive if she died. *Id.* at 8, 73-74.

Following the conversation, she began looking for a dog in June or August of 2020, and after talking to a breeder in Arkansas in October of 2020, she gave the breeder $2,500.00 to purchase and transport a male Rottweiler puppy to Pennsylvania. *Id.* at 11. She noted the dog was born on October 20, 2020, she alone signed a purchase contract as the buyer on November 30, 2020, and she alone picked up the dog when it arrived at the Tunkhannock Walmart parking lot on January 21, 2021. *Id.* at 15-18. She noted that, upon

the dog's arrival, she posted on social media "welcome to the family, Mushu." *Id.* at 18.

Appellant admitted Tyler gave her $1,000.00 towards the purchase of the dog. *Id.* at 12. She also admitted that, after the purchase, Mushu resided at the Factoryville residence with Tyler and Appellee, and Appellee named the dog "Mushu." *Id.* at 26-27, 81. Appellant testified she visited the Factoryville home at least once a week to clean, cook food, plow the snow, cut the grass, and let the dog out. *Id.* at 8. However, Appellant denied she ever transferred ownership of Mushu to anyone or discussed giving Mushu to Appellee. *Id.* at 27. She noted she purchased a crate, collar, dog bed, food, bowls, and other supplies for Mushu. *Id.* at 29-32. Also, when the family went on a vacation in August of 2021, she paid for Mushu's stay at a kennel. *Id.* at 34. She admitted Tyler and/or Appellee also purchased dog food for Mushu, as well as took the dog to the veterinarian. *Id.* at 82.

Appellant testified that, on April 28, 2022, she received a phone call from Tyler indicating Appellee had moved out of the Factoryville house and taken Mushu with her. *Id.* at 37. Appellant went to the Factoryville house on April 29, 2022, and she discovered Appellee had returned for more items. *Id.* at 39. Appellant asked Appellee, "where's my dog?" *Id.* Appellee responded, "he's mine." *Id.* Appellant testified she informed Appellee that Mushu belonged to her and, until Mushu was returned, she would not allow Appellee to remove any more items from the house. *Id.* at 39. Appellant testified

Appellee said she would bring Mushu back to the house, thus Appellant waited at the Factoryville house. *Id.* However, instead of returning with Mushu, Appellee returned with several other people and began removing items from the house. *Id.* at 39-42. Appellant testified Appellee never returned Mushu to her, and she later discovered Appellee had purchased a dog license for Mushu a week prior to moving out of the Factoryville house. *Id.* at 43, 47. Appellant subsequently bought a license for the dog for that same year-2022. *Id.* at 53.

Appellant testified she, as well as Tyler, are attached to Mushu, who reciprocates the attachment. *Id.* at 47. She testified she sought a preliminary injunction because she is fearful Appellee will hide Mushu or give him away to someone else. *Id.* at 49. She testified Mushu is "unique," and the attachment she has with him cannot be replaced with money. *Id.* at 52.

Tyler confirmed he and Appellee dated, and they lived together in Appellant's house in Factoryville. *Id.* at 96-97. In 2020, he and Appellant discussed getting a dog, and Appellant contracted with a breeder for a male Rottweiler. *Id.* He gave Appellant $1,000.00 towards the purchase of the dog, Mushu; however, Appellee contributed in no way towards the purchase or selection of the dog. *Id.* at 98. He denied Appellee ever owned Mushu; however, he admitted she sometimes paid for dog food and took Mushu to the veterinarian. *Id.* at 100-01. He also admitted he and Appellee trained Mushu,

and they were "very hands on with him." *Id.* at 102. He denied he ever gave Mushu to Appellee or that he referred to Mushu as Appellee's dog. *Id.*

Tyler confirmed Appellee moved out of the Factoryville house on April 28, 2022, and the week before, she told him she was going to move out. *Id.* at 104. Because he did not want to be present to watch Appellee move her belongings, he left the house at 10:00 a.m. on April 28, 2022, and when he returned at 9:30 p.m., both Appellee and Mushu were gone. *Id.* at 104-05. Additionally, Mushu's crate, dog food, leashes, and collars were gone. *Id.* at 106.

He testified that, prior to April 28, 2022, he and Appellee had no conversation about her taking Mushu. *Id.* at 105. Accordingly, Tyler immediately called Appellee and asked her if she had Mushu. *Id.* at 107. Appellee told Tyler that Mushu was her dog, so she took him with her. *Id.* Appellee then told Tyler that he could have Mushu or the cats. *Id.* at 111. Tyler denied he ever told Appellee that Mushu was her dog. *Id.*

Tyler testified he was very upset when he realized Mushu had been taken by Appellee. *Id.* at 108. He indicated the dog was "his best friend," and he was 100% bonded with him. *Id.* at 110.

During the cross-examination of Tyler, the following relevant exchange occurred:

Q: You were living with [Appellee]?
A: She was living at—we were both living at [Appellant's] house, yes.

Q: At the [Factoryville] residence?

A: Yes, sir.

Q: Where [Appellant] did not live.

A: Yes, sir.

Q: And was that your first Christmas together in December of that year?

A: Yes, sir.

Q: What did you get [Appellee] for Christmas?

A: I got us a dog.

Q: You got us the dog?

A: Yes.

Q: Okay. What did you get [Appellee]?

A: I got her other presents for that year, but I got it together collectively for us the dog.

Q: What other presents did you get for [Appellee]?

A: I got with the dog, I –

Q: No, what other presents did you get [Appellee] for Christmas that year?

A: Besides that, I got the dog, I got dog toys for her and everything and whatever else I got her that year, I don't remember.

Q: And it is your statement that you never gave the dog to [Appellee]?

A: Yes.

*Id.* at 117-18.

However, Tyler admitted he sent text messages to Appellee wherein he referred to Mushu as her dog. *Id.* at 121. In text messages from Tyler to Appellee on April 1, 2021, and November 4, 2021, Tyler stated:

> You don't even like the dog I got you….I hope you like your dog in this cage all day tomorrow.

***

F—ing dog I bought for you….I'm sorry I got you a dog….You got to get up for crap, play with your dog….You can't even take care of your own dog.

*Id.* at 126-27, 130.

Tyler admitted that, from the text messages, it appeared he told Appellee Mushu belonged to her. *Id.* at 130. Tyler admitted that some receipts from the veterinarian list Appellee as the owner while other documents from the veterinarian list him and Appellee collectively as the owners. *Id.* at 134, 141-42. He indicated Appellee took Mushu to some of the veterinarian visits, as well as paid for some of the visits. *Id.* at 134-37. Also, Appellee purchased food for Mushu, and Mushu never lived with Appellant. *Id.* at 137. Tyler admitted Appellee got a dog license for Mushu on April 21, 2022, which was one week before she left the Factoryville home with Mushu. *Id.* at 132.

Judith Smith, who is Appellant's mother, testified Appellant told her she was going to buy a dog in 2020. *Id.* at 163. Appellant never told Ms. Smith that the dog was a gift for Appellee. *Id.* Ms. Smith admitted that, during the past Christmas holiday, the dog was at Appellant's house in Tunkhannock, and Appellee "[t]ook the dog back to the house…in Factoryville." *Id.* at 164.

Samantha Baltrusaitis ("Samantha"), who is Appellant's daughter, testified Appellant purchased Mushu in 2020 as a "family dog." *Id.* at 171. She never heard Appellant or Tyler "refer to Mushu as [Appellee's] dog." *Id.*

She indicated that on April 28, 2022, she was at her father's house when Tyler arrived very upset. *Id.* at 175.

Megan Smith, who is Appellant's sister, testified Appellant told her in 2020 that she was buying a dog for herself. *Id.* at 177-78. Appellant never discussed giving the dog to Appellee as a gift, and she never heard Appellee say that Mushu belonged to her. *Id.*

Appellee testified she currently lives with her aunt in Tunkhannock; however, she previously lived in Factoryville with Tyler. *Id.* at 183. Appellant owned the house in Factoryville, and Appellee paid rent to her. *Id.* at 193. She indicated that, during the first year the couple lived together, Tyler gave her a dog as a Christmas gift. *Id.* at 184. Specifically, on Christmas morning, she and Tyler went downstairs, and "he pulled up a picture on his phone of Mushu and was like Merry Christmas." *Id.* She noted Mushu was not yet ready to be delivered to Pennsylvania, so Tyler did not physically present her with the dog at this time. *Id.* She chose the name "Mushu" for the dog. *Id.* at 183. She testified that, in addition to Mushu, she received a dog bed, dog collar, a dog leash, and dog toys for Christmas from Tyler. *Id.* at 185. She did not receive any non-dog related gifts from Tyler for Christmas that year. *Id.*

Appellee testified Tyler never told her that Mushu did not belong to her. *Id.* at 186. She indicated "it was a common fact that [Mushu] was given to [her] as a Christmas gift." *Id.* at 187. She told Tyler that Mushu was "the

best Christmas gift I'll ever get in my life because I always wanted a dog." *Id.* From the beginning, she was under the impression that Mushu was her dog. *Id.* at 188. She confirmed Tyler sent her several text messages during their relationship wherein he referred to Mushu as "her dog." *Id.* She specifically testified Tyler told her he bought the dog for her, and "he would hold [it] over her head quite frequently." *Id.* at 212. She indicated that, prior to the instant dispute, she was unaware that Appellant had contributed money towards the purchase of Mushu, and she was under the impression Tyler had fully purchased Mushu as a gift for her. *Id.* at 211-12.

Appellee testified she paid for bills related to Mushu, including veterinarian bills. *Id.* at 188. She testified that, aside from one time when Tyler took Mushu to the veterinarian because she was at work, she always took Mushu to the veterinarian by herself. *Id.* at 191. She indicated Appellant neither paid for any of the veterinarian bills nor reimbursed Appellee for expenses related to Mushu. *Id.* at 195. She testified that, when the family went on a vacation, she arranged for Mushu to stay with her friends, who had pit bulls, but Appellant offered to pay for Mushu to stay at a kennel instead. *Id.* Appellee and Tyler drove Mushu to the kennel, and they picked him up after the vacation. *Id.* at 196-97.

Appellee testified that during the time she lived in the Factoryville house Appellant often appeared unannounced. *Id.* at 200-02. She indicated Appellant cleaned the house and folded the laundry. *Id.* She testified Appellant

"never came over to see the dog. [S]he came over to take care of her son, Tyler." *Id.* at 202. Appellant indicated Mushu never stayed overnight with Appellant at the home in Tunkhannock. *Id.* She also testified Mushu never wore the collar, which was purchased by Appellant. *Id.*

Appellee testified the following occurred as she was removing her items from the Factoryville house on April 29, 2022:

> So, we were like walking around taking a count of like okay, we need to grab the furniture from here, from here, and then [Appellant] like rips into the driveway….And she was like what are you doing? I'm like moving out my stuff. And she's like where's my dog? And I was like…he's not your dog, he's my dog. And she was like he's my dog. I bought him, he's mine. And I was like no, I received him as a Christmas gift. I am his main caregiver. I do everything for him, he is my dog. And she was like if you don't give me my dog, I'm calling and having you all arrested for trespassing. Like get out of my house. And I was like I need to get my stuff. And she was like I need my dog.

*Id.* at 204-05.

Appellee testified she did not bring Mushu back to the Factoryville house because "he's [her] dog." *Id.* at 206. She admitted that, after Appellant confronted her during the move-out, she told Appellant she would bring Mushu back to the Factoryville house. *Id.* at 208. She indicated she said this to Appellant because she was scared and wanted to be able to move out the rest of her belongings. *Id.* at 207-08. Appellee confirmed Mushu currently lives with her at her aunt's house. *Id.* She testified she loves Mushu like a mother loves her son. *Id.* at 212.

On cross-examination, Appellee acknowledged Appellant purchased food, a dog bed, and a crate for Mushu. *Id.* at 219. She testified she believed Appellant purchased the items because she was an "overbearing mother" who often paid for Tyler's expenses. *Id.* at 224. Appellee indicated Appellant never told her that Mushu belonged to Appellant or expressed any interest in removing Mushu from the Factoryville house. *Id.* She acknowledged she did not tell Tyler she was going to take Mushu when she moved out. *Id.* at 220.

Nancy Naylor, who is Appellee's mother, testified that in November of 2020, Tyler and Appellee were eating dinner at her house. *Id.* at 231. After dinner, Appellee went to use the bathroom, and "Tyler came up to [Ms. Naylor] with his phone and he said look what I'm giving [Appellee] for Christmas this year." *Id.* Ms. Naylor testified Tyler showed her a photo of a Rottweiler puppy. *Id.* at 232. Tyler told Ms. Naylor the puppy wouldn't be available until after Christmas. *Id.* Ms. Naylor told Tyler Appellee would love the present because she had always wanted a puppy. *Id.*

Ms. Naylor testified that, on Christmas day, Appellee texted her a photo of the puppy. *Id.* at 233. She indicated Appellee was "ecstatic" over receiving the puppy. *Id.* She further testified Tyler reported to her that Appellee was thrilled with receiving the dog, which in turn made Tyler happy. *Id.* at 235. To her knowledge, Tyler did not get Appellee any other present for Christmas that year. *Id.* She indicated Tyler referred to Mushu as "[Appellee's] dog." *Id.*

On re-direct examination, Appellant testified she never authorized Tyler to give Mushu to Appellee. *Id.* at 240. She indicated she had no idea Tyler "might be planning on giving [Mushu to Appellee] as a Christmas gift," and had she known, she would have said "no." *Id.*

On re-direct examination, Tyler testified he "did not get the dog for [Appellee], [he] got the dog for [them] as like as a family, but it wasn't specifically for [Appellee]." *Id.* at 243. He denied he gave Mushu to Appellee as a Christmas gift or that he told Appellee's mother he was going to get Appellee a dog as a Christmas gift. *Id.* at 244. He indicated that since Appellant's name is on the bill of sale for Mushu he believes it would have been impossible for him to transfer ownership to Appellee. *Id.*

On June 3, 2022, the trial court entered an order denying Appellant's petition for a preliminary injunction. This appeal followed on June 20, 2022. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant timely complied. On August 22, 2022, the trial court filed a Rule 1925(a) opinion.

On appeal, Appellant presents the following issues in her "Statement of Questions Involved" (verbatim):

1. The trial court committed an abuse of discretion, committed an error of law and/or fact and/or failed to conduct a reasoned analysis of the evidence presented in that the Court found that Appellant did not show a likelihood of success on the merits of the case so as to be entitled to entry of a preliminary injunction.

2. The trial court committed an abuse of discretion, committed an error of law and/or fact and/or failed to conduct a reasoned analysis of the evidence presented in that the Court failed to

- 13 -

issue an injunction or to analyze all of the evidence presented at the hearing.

3. The trial court committed an abuse of discretion, committed an error of law and/or fact and/or failed to conduct a reasoned analysis of the evidence presented in that the Court did not analyze all of the factors necessary to determine whether a preliminary injunction should be issued.

4. The trial court committed an abuse of discretion, committed an error of law and/or fact and/or failed to conduct a reasoned analysis of Appellant's claims for replevin and conversion.

5. The trial court committed an abuse of discretion, committed an error of law and/or fact and/or failed to conduct a reasoned analysis should this Court conclude that anyone else besides Appellant owns and at all relevant times hereto, owned the dog in question.

6. [Appellant reserves the right to supplement this Statement upon receipt of the trial court transcript.]—the Rule 1925(b) Statement was not updated after receipt of the trial court transcript.

Appellant's Brief at 4-5 (italics omitted).

Initially, we note that, in her appellate brief, Appellant specifically indicates she is withdrawing issue four as a stand-alone assignment of error.[2] *Id.* at 20. Further, regarding issue six, Appellant presents no argument, and there is no indication she has supplemented her issues.

Regarding her remaining issues, which are interrelated, Appellant addresses the issues together in one argument section. In essence, Appellant

---

[2] In any event, we note the trial court explained it did not rule on Appellant's substantive replevin and conversion claims, which were raised in Appellant's civil complaint, because the June 3, 2022, hearing pertained solely to Appellant's request for a preliminary injunction. Trial Court Opinion, filed 8/22/22, at 9 n.4. Notably, on July 15, 2022, Appellee filed an answer to Appellant's civil complaint, and thus, the underlying matter is ongoing.

contends the trial court erred in denying her request for a preliminary injunction. She asserts she met all the prerequisites for the entry of a preliminary injunction, and thus, the trial court erred in denying her petition.

Appellant challenges the trial court's denial of a preliminary injunction, which we review for an abuse of discretion. *Morgan Trailer Mft. Co. v. Hydraroll, Ltd.*, 759 A.2d 926, 932 (Pa.Super. 2000).

> [I]n reviewing preliminary injunction orders, "an appellate court is to conduct a searching inquiry of the record. Accordingly,…the scope of review in preliminary injunction matters is plenary." *Warehime v. Warehime*, 580 Pa. 201, 209 n.7, 860 A.2d 41, 46 n.7 (2004). With regard to the standard of review, appellate review of a trial court's order granting or denying preliminary injunctive relief is "highly deferential." *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 646, 828 A.2d 995, 1000 (2003).

*Hendricks v. Hendricks*, 175 A.3d 323, 329-30 (Pa.Super. 2017) (footnote omitted).

> Under this highly deferential standard of review, an appellate court…examines the record to determine if there were any apparently reasonable grounds for the action of the court below. "Apparently reasonable grounds" exist to support a lower court's denial of injunctive relief where the lower court has properly found that any one of the six essential prerequisites for a preliminary injunction is not satisfied.

*SEIU Healthcare Pennsylvania v. Com.*, 628 Pa. 573, 104 A.3d 495, 501 (2014) (quotations and some quotation marks omitted).

The six essential prerequisites that a moving party must demonstrate to obtain a preliminary injunction are as follows:

> (1) an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by

- 15 -

damages; (2) greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; (5) the injunction it seeks is reasonably suited to abate the offending activity; and (6) a preliminary injunction will not adversely affect the public interest. *See Summit Towne Ctr., Inc.*, [*supra*,] 828 A.2d [at] 1001[.] For a preliminary injunction to issue, every one of these prerequisites must be established; if the petitioner fails to establish any one of them, there is no need to address the others. *Allegheny Cnty. v. Commonwealth*, 518 Pa. 556, 544 A.2d 1305, 1307 (1988).

*In re: Trust under Deed of Trust of Nell G. Jack, Settlor dated May 29, 1981*, 284 A.3d at 457. *See SEIU Healthcare Pennsylvania*, *supra*.

A decision addressing a request for a preliminary injunction generally requires extensive fact-finding by the trial court because the moving party must establish it is likely to prevail on the merits. *See Summit Towne Ctr., Inc.*, *supra*, 828 A.2d at 1001. Simply put, "the moving party must establish a *prima facie* right to relief….If the moving party's right to relief is unclear, then a preliminary injunction should not issue." *Synthes USA Sales, LLC v. Harrison*, 83 A.3d 242, 249 (Pa.Super. 2013) (citations omitted).

Here, we note the trial court summarized the relevant testimony and made extensive factual findings, which are supported by the record. Moreover, the trial court determined that, based on the evidence, Appellant, who was the moving party, failed to demonstrate her right to relief is clear and/or that she is likely to prevail on the merits. We find no error in this regard and, thus,

we conclude the trial court had apparently reasonable grounds to deny the preliminary injunction.[3] *See SEIU Healthcare Pennsylvania*, *supra*.

Here, the basis for Appellant's request for injunctive relief is a dog, Mushu. Pennsylvania law considers dogs to be personal property. *See Snead v. Society for Prevention of Cruelty to Animals of Pennsylvania*, 929 A.2d 1169 (Pa.Super. 2007); *Desanctis v. Pritchard*, 803 A.2d 230 (Pa.Super. 2002). Thus, in order to demonstrate she is likely to prevail on the merits and/or has a clear right to relief, Appellant, as the moving party, must establish a *prima facie* case that she, as opposed to Appellee, is the rightful owner of Mushu, and Appellee, without justification, is unreasonably withholding Mushu from her.[4]

---

[3] Contrary to Appellant's assertion in her second issue, we conclude the trial court properly examined the evidence presented at the hearing and made relevant factual findings. *See* Trial Court Opinion, filed 8/22/22, at 2-5. Further, contrary to Appellant's assertion in her third issue, we conclude the trial court properly analyzed the essential prerequisites that a moving party must demonstrate to obtain a preliminary injunction. *See id.* at 5-9. In any event, as indicated *supra*, the trial court has "apparently reasonable grounds" to deny a preliminary injunction if the petitioner fails to establish any one of the essential prerequisites, and, thus, there is no need to address the others. *SEIU Healthcare Pennsylvania*, *supra*, 104 A.3d at 501 (quotation omitted).

[4] Under Pennsylvania case law, conversion is "the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n. 3 (Pa.Super. 2000) (quotation omitted). A person may incur liability for conversion by "[u]nreasonably withholding possession from one who has the right to it." *Martin v. National Sur. Corp.*, 437 Pa. 159, 262 A.2d 672, 675 (1970). The

*(Footnote Continued Next Page)*

Based on the evidence presented at the hearing, the trial court reasoned

as follows:

> It was undisputed that [Appellant] arranged for the purchase of the puppy, signed a bill of sale for the puppy, partially paid for the puppy, and purchased a dog license for the dog for the year 2022. However, these undisputed facts are not dispositive of [Appellant's] ownership of the dog. Both [Appellee] and Tyler provided testimony contradicting [Appellant's] claim of ownership. Tyler paid for almost half of the cost for the puppy, and he acknowledged that in text messages to [Appellee], he referred to Mushu as [Appellee's] dog. Tyler also admitted that he got the dog for himself and [Appellee] for Christmas. [Appellant testified that she discussed the purchase of the dog with Tyler because she wanted Tyler to have something positive if she died during chemotherapy. Appellee testified Tyler gave her the dog as a Christmas gift.]

> All parties acknowledged that [Appellee] named the dog. [Appellee] took the dog to almost all of the veterinarian appointments. She also purchased a dog license for the dog in 2022, prior to [Appellant's] purchase of a dog license for Mushu. Furthermore, the dog lived with Tyler and [Appellee] from the moment he was picked up by [Appellant], and the dog never stayed with [Appellant] at her home. In view of these factors, [Appellant] failed to show that she is likely to prevail on the merits of her case [or that her right to relief is clear since], considering all the evidence presented, it is still unclear as to who owns Mushu.

---

action of replevin is founded upon the wrongful taking and detention of property and seeks to recover property in the possession of another. **See Brandywine Lanes, Inc. v. Pittsburgh National Bank**, 284 A.2d 802 (Pa.Super. 1971) (*en banc*). Equitable principles are applicable to a legal action in replevin. **See id.** "A plaintiff in a replevin action need not set up title good against the whole world but must show good title as against the defendant in possession. In addition to good title, the plaintiff must show that [s]he is entitled to immediate possession of the property in question." **Id.** at 806 (citations omitted).

Trial Court Opinion, filed 8/22/22, at 8-9 (footnote omitted).

We agree with the trial court that Appellant's alleged ownership of Mushu, to the exclusion of Appellee, forms the basis for Appellant's request for preliminary injunctive relief. Moreover, in light of the conflicting evidence presented at the preliminary injunction hearing related thereto, we find the trial court did not err in holding Appellant failed to demonstrate her right to relief is clear. Thus, "'apparently reasonable grounds' exist to support [the trial] court's denial of injunctive relief[.]" **SEIU Healthcare Pennsylvania**, **supra**, 104 A.3d at 501 (quotation omitted).

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2023